UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DARRYL BROADNAX, | ) |
| | ) |
| PLAINTIFF, | )   Case No. |
| | ) |
| v. | )   Hon. |
| | ) |
| RHOMBUS ENERGY SOLUTIONS, INC., | ) |
| | ) |
| DEFENDANT. | ) |

CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen Shearouse (P84852)
615 Griswold Street, Suite 600
Detroit, Michigan
carla@aikenslawfirm.com
austen@aikenslawfirm.com

---

*There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

## JURY DEMAND

COMES NOW Plaintiff Darryl Broadnax and hereby demands trial by jury.

## COMPLAINT

As for his Complaint against Defendant, Plaintiff, Darryl Broadnax, states that:

1

## PARTIES AND JURISDICTION

1. At all times relevant to this Complaint, Plaintiff Darryl Broadnax was a resident of Dearborn, Michigan.

2. Defendant Rhombus, Inc., is a Delaware Corporation, with an operational address located at 186 N Main Street, 2nd Floor, Suite 1, Plymouth, Michigan.

3. Venue is proper in this Court, because the violations Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

4. This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

6. Plaintiff is an African-American, Muslim man who was employed by the Defendant.

7. Plaintiff's employment with Defendant began on or about April 25, 2022, as a Production Manager.

8. At the time of his hiring, Plaintiff's direct supervisor was Scott Stromenger.

9. Plaintiff began to perform the duties and functions of his role under an introductory period.

10. Almost immediately after being hired, Plaintiff was told he was hired to "change the culture."

11. Upon information and belief, several troubling comments were made to Plaintiff such as "If [he] terminate[d] two females there then that would be all [he] need[ed] to do to solidify [his] position;" "you aren't who you say you are, you aren't like those people;" and "oh you're a Muslim, that's why all of this was going on."

12. The first statement was made shortly after Plaintiff's start date by Kenneth Blank.

13. Plaintiff documented this conversation and continued to gather knowledge and information on the position and the company.

14. There was no training in place for Plaintiff as a manager, which required Plaintiff to develop operational knowledge on his own.

15. In an effort to get the production team up to standards, Plaintiff began to make a list of issues that either violated company policy or negatively affected performance, including but not limited to:

      a. Employee attendance issues;

      b. Poor work performance;

      c. Phone usage while working;

      d. Blaring music on the production floor; and

      e. No access given to Mr. Broadnax regarding employee "call-ins."

16. Upon information and belief, late starts and call-offs were only directed to Cleveland Price, the Floor Supervisor.

17. During this observational period, Mr. Broadnax observed Russell Pulter, the Warehouse Manager, yell and use profanity at Mr. Price for a missing part that was allegedly lost in production.

18. Mr. Broadnax observed Mr. Pulter and "Steve," another warehouse associate, treating the production team – who were almost all African-American – as "second class citizens."

19. During a team meeting, Mr. Broadnax informed the production team of his intention to have respect returned to the team as well as rolling out several new production procedures designed to improve quality of life and performance.

20. These announcements were met with applause from the production team.

21. Upon information and belief, Kenneth Blank stated "Russell" and "Steve" were not happy with the statements made during the meeting.

22. "Scott," Deane Davidson (VP & GM), and "Courtney" (HR Manger) told Mr. Broadnax that all the proposed changes would be well-accepted.

23. However, Mr. Blank said that some of the team was against the new format.

24. Mr. Blank further stated that Russell refused to release various parts needed to complete several builds and that Russell was untouchable due to being Scott's friend.

25. Mr. Blank also told Plaintiff that being a Muslim and leaving every Friday during lunch would not be tolerated.

26. All of this conversation was documented.

27. Plaintiff was offered a "resolution" to the tension surrounding his position, if he would drink with Scott from the bottle of Jameson whiskey Scott kept in his office drawer.

28. Plaintiff was told this drink was the way to "cement" his job.

29. Mr. Broadnax reinforced that his religion and company policy prohibited drinking on company property.

30. These incidents were reported to Courtney in HR, who said she would conduct an investigation into his complaints.

31. Upon information and belief, no real investigation occurred.

32. During the same period of time, Russell continued to be degrading and unprofessional to Mr. Broadnax and his team.

33. Several comments made by Russell related back to the religion of Mr. Broadnax.

34. Mr. Broadnax reported these comments to HR, to which Russell stated he did not care, because Mr. Broadnax "wasn't who [he] said [he] was."

35. After the "investigation," Courtney from HR begged Plaintiff not to pursue the concerns any longer.

36. Several meetings occurred with no progress made at any of the meetings.

37. The comments from Russell and Kenneth continued during this time and resulted in Courtney telling Mr. Broadnax that all terminations needed to be run through HR, per Steve and Deane.

38. Upon information and belief, Scott confronted Mr. Broadnax about the reports against Russell and stated "[he] shouldn't be causing problems for [his] friend Russ!"

39. Mr. Broadnax expressed concern about major policy violations and was told HR would investigate any concerns.

40. On or about June 8, 2022, Plaintiff observed Brian Smith, a build technician, continuously on his phone, making numerous trips to the bathroom, and otherwise neglecting his assignments on the door line.

41. When questioned on the issues, Mr. Smith became insubordinate and levied a barrage of profanity at Mr. Broadnax.

42. The incident was documented and Mr. Smith was written up.

43. On June 10, 2022, Mr. Smith continued the same conduct.

44. Due to this repeated neglect, other employees were unable to meet the production schedule that required delivery of the parts by June 10, 2022.

45. Mr. Price assisted Mr. Broadnax with working to finish the order and crate it appropriately.

46. Mr. Broadnax terminated Mr. Smith for this repeated insubordination and neglect of his job responsibilities.

47. After this, Scott approached Mr. Broadnax in a rage for this termination, stating there was no reason to terminate Mr. Smith, and he was immediately re-hired.

48. The following week, Mr. Broadnax requested that an African American female employee change her attire to be in compliance with the employee dress code.

49. Scott and Deane approached Mr. Broadnax and told him not to speak of the dress code to other employees and was sent home.

50. Defendant did not give Plaintiff any autonomy in his role and, upon information and belief, only hired him to supervise other African American workers without giving him any authority whatsoever.

51. Upon information and belief, Defendant only hired Plaintiff because it wanted to appear to support diversity, but it does not provide any autonomy to African American managers in the same way that it does other managers and holds them to a different standard, including terminating them earlier than managers of other races.

52. Plaintiff was terminated via a text message from Courtney on or about June 22, 2022.

53. A letter of termination was issued on the same date.

54. A right to sue letter was issued by the EEOC on March 7, 2023, and this lawsuit followed.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq.* ("Title VII")**

55. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

56. At all material times, Defendant was an employer within the meaning of Title VII, as amended.

57. At all material times, Plaintiff was an employee within the meaning of Title VII, as amended.

58. At all material times, Plaintiff identified as a religious individual, a fact that used throughout Plaintiff's employment, and is a member of a protected class pursuant to Title VII.

59. Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against an employee on the basis of that employee's religion.

60. Defendant's conduct, as alleged herein, violated Title VII.

61. Defendant's termination of Plaintiff's employment a discriminatory impact upon him due solely to his sincerely held religious beliefs.

62. Defendant used Plaintiff's religious beliefs to undermine or otherwise target Plaintiff with discriminating treatment in violation of Title VII.

63. Upon information and belief, Plaintiff had responsibilities and authority stripped from his position due to his religious beliefs.

64. As stated in the allegations of this complaint, Plaintiff brought numerous issues to HR and/or his superiors; none of these complaints resolved or improved any of the treatment he received.

65. A respondeat superior relationship existed because the person(s) responsible for terminating Plaintiff were employed and otherwise controlled by Defendant.

66. Defendant and its agents' unlawful actions were intentional, willful, malicious, and done with reckless disregard for Plaintiff's rights.

67. Plaintiff notified Defendant of the sincerity of his beliefs.

68. As alleged in the statement of facts, Plaintiff's beliefs were acknowledged and then used against him to distinguish him as a lesser employee for not engaging in drinking or other activities.

69. As a proximate cause of Defendant's discriminatory actions, Plaintiff suffered past wage loss, future wage loss and earning capacity.

70. As a proximate cause of Defendant's discriminatory actions, Plaintiff's physical health suffered.

71. As a proximate cause of Defendant's discriminatory actions, Plaintiff suffered humiliation, anxiety, mental anguish, and emotional distress.

72. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

73. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT II
## DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

74. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

75. At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

76. Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to sexually harass or discriminate against an employee.

77. A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

78. Plaintiff is Muslim and a member of a protected class.

79. Defendant's conduct, as alleged herein, violated ELCRA.

80. Defendant's termination of Plaintiff's employment a discriminatory impact upon him due solely to his sincerely held religious beliefs.

81. Defendant used Plaintiff's religious beliefs to undermine or otherwise target Plaintiff with discriminating treatment in violation of ELCRA.

82. Upon information and belief, Plaintiff had responsibilities and authority stripped from his position due to his religious beliefs.

83. As stated in the allegations of this complaint, Plaintiff brought numerous issues to HR and/or his superiors; none of these complaints resolved or improved any of the treatment he received.

84. A respondeat superior relationship existed because the person(s) responsible for terminating Plaintiff were employed and otherwise controlled by Defendant.

85. Defendant and its agents' unlawful actions were intentional, willful, malicious, and done with reckless disregard for Plaintiff's rights.

86. Plaintiff notified Defendant of the sincerity of his beliefs.

87. As alleged in the statement of facts, Plaintiff's beliefs were acknowledged and then used against him to distinguish him as a lesser employee for not engaging in drinking or other activities.

88. As a proximate cause of Defendant's discriminatory actions, Plaintiff suffered past wage loss, future wage loss and earning capacity.

89. As a proximate cause of Defendant's discriminatory actions, Plaintiff's physical health suffered.

90. As a proximate cause of Defendant's discriminatory actions, Plaintiff suffered humiliation, anxiety, mental anguish, and emotional distress.

91. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

92. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT III
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

93. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

94. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

95. A respondeat superior relationship existed because agents of Defendants had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

96. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

97. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

98. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendants' ability to accuse Plaintiff of misbehaving, poor performance, or neglect made the situation untenable.

99. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

100. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

101. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

102. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN RIGHTS ACT MCL 37.2102 et seq.

101. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

102. At all material times, Defendant was an employer covered by, and within the meaning of, the ELCRA.

103. At all material times, Plaintiff was an employee covered by, and within the meaning of, the ELCRA.

104. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or retaliate against an employee for engaging in

protected activity.

105. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

106. Plaintiff engaged in protected activity by making repeated formal complaints about improper behavior to his superiors.

107. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior because he was engaging in this protected activity with his superiors.

108. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against Plaintiff, culminating in his termination.

109. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

110. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

111. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish,

and emotional distress.

112. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

113. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT V

### HARRASMENT-DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION THE ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

114. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

115. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

116. Defendant's conduct, as alleged herein, violated Michigan's Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to harass and/or discriminate against an employee because of their race.

117. A respondeat superior relationship existed because Defendant's employees had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

118. Plaintiff is African-American and as such is a member of a protected class.

119. Plaintiff was subjected to offensive communication or conduct on the basis of his membership in this protected class, including his hostile work environment, failure to provide him with any support or autonomy, excess scrutiny, and eventually, premature termination, as compared to other managers who were not African American.

120. The communication and conduct was unwelcomed.

121. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

122. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

123. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation, and eventually, termination of his job.

124. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## DISPARATE IMPACT/RACE DISCRIMINATION IN VIOLATION OF ELCRA, MCL 37.2102 et seq. BY DEFENDANT

125. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

126. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

127. Defendant's conduct, as alleged herein, violated Michigan's Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to harass and/or discriminate against an employee because of their race.

128. Plaintiff was qualified for the position he held with Defendant.

129. Defendant's policy and/or practice regarding failing to train or provide any support to African American employees, placing African American managers only in an area to supervise only other African American employees, punishing African American employees more harshly, quickly, and severely for minor offenses, allowing no opportunity for African American workers to advance within the company, punishing African American employees for doing their job, and not giving African American employees a chance to prove themselves before firing

them, has had, and continues to have a significant disparate impact on African American employees of Defendant, which includes Plaintiff.

130. The existing manner of treating African American employees differently than other, non-African American employees, serves no significant business purpose.

131. Defendant can do business in a manor that has less discriminatory impact than Defendant's current practices.

132. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation, and eventually, termination of his job.

133. Plaintiff requests relief as described in the Prayer for Relief below.

### RELIEF REQUESTED

PLAINTIFF, DARRYL BROADNAX, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  June 5, 2023

                                Respectfully Submitted,
                                */s/ Carla D. Aikens*
                                Carla D. Aikens (P69530)
                                Austen Shearouse (P84852)
                                CARLA D. AIKENS, P.L.C.
                                *Attorneys for Plaintiff*
                                615 Griswold Ste. 709
                                Detroit, MI 48226
                                carla@aikenslawfirm.com