- 1 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL BROADNAX,

    Plaintiff,

  v.

RHOMBUS ENERGY
SOLUTIONS, INC.,

    Defendant.
_____/

Case No. 23-11343

Hon. George Caram Steeh

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 20)

    Defendant seeks summary judgment on Plaintiff's claims of race and religious discrimination and retaliation. For the reasons explained below, the court concludes that Plaintiff's claims are without merit and that Defendant's motion is properly granted.

BACKGROUND FACTS

    In April 2022, Plaintiff Darryl Broadnax was hired as a production manager by Defendant Rhombus Energy Solutions, Inc. He worked in that position for approximately nine weeks before Rhombus fired him, allegedly for performance issues. Broadnax claims that he was terminated based upon his religion (Muslim) and race (African American), and in retaliation for opposing discrimination.

- 1 -

Broadnax was hired to work at Rhombus's Dearborn plant, which manufactures charging stations for electric vehicles. As production manager, Broadnax was responsible for overseeing and organizing all production activity on the shop floor, including planning production schedules and supervising employees. ECF No. 20-14. According to his job description, the position required a "minimum of five (5) years of production management experience in [a] plant/manufacturing environment" and a "BSc/BA in Business Administration or relevant field is preferred." *Id.*; *see also* ECF No. 20-4.

Broadnax's resume states that he has over twenty years of experience in production management, including over twenty years at TRW Automotive, where he supervised "55 UAW employees." ECF No. 20-6. He also represented that he had a bachelor's degree in computer information systems from Marygrove College and an associate's degree in instrumentation from Henry Ford Community College. *Id.* Based upon his resume, Broadnax was interviewed for the job by Director of Operations Scott Stromenger, Vice President and General Manager Deanne Davidson, and Senior Human Resources Manager Courtney Davis. Stromenger testified that Broadax's "resume looked very good" and "he seemed to speak well of his prior jobs and the things that he could do," so he "felt

- 2 -

strongly that he would be a good candidate for the job." ECF No. 20-2 at PageID 412; *see also* ECF No. 20-3 at PageID 420 (Deposition of Courtney Davis).

After Broadnax started as production manager, Stromenger spoke to him about being "too aggressive" in disciplining employees, including writing employees up "without authorization." *Id.* at PageID 406. HR Manager Courtney Davis received complaints from employees that Broadnax was heavy handed with discipline; for example, he wrote up an employee who was three minutes late from lunch; a female employee complained that he was "picking on" her for laughing and dancing on the production floor; and another female employee reported feeling "harassed and scared" based upon his handling of a dress code violation. ECF 20-3 at PageID 422; ECF No. 20-10. Broadnax contends that he was not given any authority and was there to "give the appearance of diversity rather than to permit him to do his job." ECF No. 23 at PageID 524-25.

Broadnax complained to Davis that another manager, Russell Pulter, used the term "colored" to refer to black people. Upon investigation, Davis learned that Pulter used the term in the context of telling a story about when he was in high school, during a segregated period, when there were "doorways for the colored folks and doorways for the whites." ECF No. 20-3

at PageID 422. Based upon her investigation, Davis, who is black, did not believe Pulter had used the term with demeaning or racist intent, otherwise she would have disciplined him. *Id.* at PageID 429.

Broadnax also reported to Davis that other employees felt that Pulter was racist. When Davis spoke to those particular employees, however, they said "that was not true." *Id.* at PageID 426. Davis concluded that Broadnax's complaint that Pulter was a racist "was a fabrication" because none of the employees Broadnax identified provided any support for his claim. *Id.*

In June 2022, Broadnax had an altercation with another employee, Brian Smith, that led to him receiving written discipline. Broadnax reported to Davis that Smith told him to "get out of his face and used profanity while doing this." ECF No. 20-12. Davis was "surprised" because Smith "was always a stellar employee." *Id.* Davis suggested that Broadnax "take the time to coach" Smith because "he could have been having a bad day." *Id.* The next day, Davis learned that Broadnax had written up Smith and "a lot of insults" were exchanged "during the counseling." *Id.*  As a result, Davis told Broadnax that she or someone from HR "must be present for all terminations and counseling." *Id.*

On Friday, June 10, 2022, Broadnax sent an email to Davis, seeking assistance with counseling a few employees, including Smith. Davis responded, asking Broadnax to "hold off" until they could discuss the matter as a team on Monday. *Id.* On Monday, Davis learned that Broadnax had terminated Smith in the meantime, even though he was instructed to wait until he could meet with his manager and HR. *Id.*

Davis issued a written warning to Broadnax, stating that he needed to "build a better relationship with the production team" and to follow Rhombus's policies and procedures regarding discipline and counseling. *Id.*; *see also* ECF No. 20-2 at PageID 407. Stromenger explained that Broadnax "didn't have the authorization to fire anybody. If he had a complaint, he had to go through the proper channels. He had to go through HR and get the documentation done." *Id.*

For Rhombus, the last straw regarding Broadnax was that he was perceived to be "harassing" a female employee about her clothing. ECF No. 20-3 at PageID 424. Davis testified that Broadnax had been instructed not to counsel employees alone, and that the employee's clothing did not violate the dress code. *Id.* Davis, Stromenger, and Davidson decided that Broadnax was not a good fit and that his employment would be terminated. ECF No. 20-2 at PageID 409. Stromenger explained that "it got to the point

where I was literally having a mutiny on the production floor. . . . I was going to lose several key employees due to his harassment and the way that he talked to people on the floor." *Id.*

In her declaration, former employee Takelia Stephens stated that she witnessed the dress code incident; "I told Darryl she was not supposed to be wearing that [a spandex jumpsuit] and he nicely asked her to change her clothes." ECF No. 23-1. Stephens explained this to Davis, but "they took the word of other people." *Id.* Stephens alleges that while they waited for HR, another employee, "Ken," "was calling Darryl the n-word which I thought was inappropriate." *Id.* She opined that Broadnax was "treated poorly and fired because he was Black and did not just 'go along' like they expected Black people who worked there to do." *Id.*

Rhombus issued a letter to Broadnax on June 17, 2022, stating that his position was terminated because "you are unable to perform your job functions as Production Manager and . . . you have been unwilling to follow Rhombus' policies." ECF No. 20-13. The letter referenced incidents including the firing of Smith, "using intimidating/harassing tactics with subordinates," "disciplining employees without justification," "using a confrontational tone with employees and/or workplace bullying," and "fabricating claims of discrimination." *Id.*; ECF No. 20-10.

Broadnax filed this action against Rhombus alleging the following counts: Count I, religious discrimination in violation of Title VII; Count II, religious discrimination in violation of the Elliott-Larsen Civil Rights Act; Count III, hostile work environment in violation of ELCRA; Count IV, retaliation in violation of ELCRA; Count V, racial harassment/discrimination in violation of ELCRA; and Count VI, disparate impact/race discrimination in violation of ELCRA.

During discovery, it came to light that Broadnax falsified the resume he submitted to Rhombus to obtain the job. Although he stated on his resume that he had an employment history dating back to 1989 with companies such as TRW Automotive, American Axle, and Dietrich Metal Stamping, he in fact never worked for those employers. ECF No. 20-5 at PageID 443, 447. Rather, he held several short-term positions that he omitted from his resume, and from which he had been fired. *Id.* at PageID 444-45, 448. His most consistent work experience has been driving a taxi. *Id.* at PageID 445-46, 449. Broadnax also did not have the bachelor's or associate's degrees that he listed on his resume; he included them "to make my resume look good so I can get the job." *Id.* at 447-48. Broadnax was also a convicted felon who was on probation at the time he was hired. Stromenger testified that Broadnax would have been disqualified from a

managerial position as a result. ECF No. 20-2 at PageID 410. Broadnax contends that Rhombus was aware of his criminal history and that Stromenger knew that he never worked at TRW.

LAW AND ANALYSIS

I.      Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 252.

II.     Discrimination Claims

Both Title VII and the Elliott-Larsen Civil Rights Act prohibit discrimination based upon race or religion. 42 U.S.C. § 2000e–2(a)(1); M.C.L. § 37.2202(1)(a). Because Broadnax does not present direct evidence of discrimination, the court considers whether he has presented a case based upon circumstantial evidence under the burden-shifting framework set forth in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). To establish a prima facie case of race or religious discrimination under Title VII or ELCRA, a plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for the job; 3) he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014); *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004) (analysis is the same under Michigan and federal law). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment action. *Humenny*, 380 F.3d at 906. If the employer does so, the plaintiff must produce evidence that the "proffered reason is a pretext for discrimination." *Id.*

Defendant argues that Plaintiff has not established a prima facie case because he cannot demonstrate that he was qualified for the job. "At the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003). "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

Broadnax has not attempted to make this showing. He has not demonstrated that he possesses the minimum requirements of the Production Manager position, as set forth in the job description: at least five years of experience and a college degree. *See Alexander v. CareSource*, 576 F.3d 551, 563-64 (6th Cir. 2009) (employer's "job description amounts to evidence of the minimum job qualifications"). Indeed, he admitted that the qualifications presented on his resume were falsified. Although Broadnax claims that Stromenger knew that he never worked at TRW, this

alleged knowledge does not establish that he was objectively qualified. *See Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1251 (7th Cir. 1990) (explaining that because "the determination of whether a plaintiff is 'qualified' requires an objective analysis," "an employer's knowledge or lack of knowledge is of no relevance at the prima facie stage of the case"). The court concludes that Broadnax has failed to establish a prima facie case of race or religious discrimination under Title VII or ELCRA. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) ("The prima facie case serves an important function in the litigation; it eliminates the most common nondiscriminatory reasons" for the adverse action.).

Broadnax has also failed to establish that Rhombus's reasons for terminating his employment were pretextual. To show pretext, a plaintiff may demonstrate "(1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate his [or her] discharge, or (3) that they were *insufficient* to motivate discharge." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 728 (6th Cir. 2008) (emphasis in original). In other words, a plaintiff must present "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Providing several examples, Rhombus maintains that it terminated Broadnax due to his poor performance as a manager.[1] In response, Broadnax contends that he was not given autonomy as a manager and that Rhombus's examples of his poor performance were instances in which he was just trying to do his job. Stromenger and Davis testified that Broadnax was counseled about what they viewed as his heavy-handed approach to employee discipline, and he received a written warning regarding his unauthorized termination of Brian Smith. Broadnax has provided no evidence that these reasons were fabricated or that Rhombus did not honestly believe them. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326-27 (6th Cir. 2021) ("To show pretext on the ground that the reason for

---

[1] Plaintiff challenges the admissibility of Defendant's chart (Exhibit I), which lists the issues Defendant had with Plaintiff's performance, because it was allegedly not produced in discovery and is hearsay. ECF No. 20-10. However, the chart is marked with Bates Nos. Broadnax 0011-12, which were identified as part of Plaintiff's personnel file and emailed to Plaintiff's counsel on September 5, 2023. Further, the chart was discussed at Courtney Davis's deposition. ECF No. 24-6 at PageID 576. The court may consider "evidence submitted at summary judgment in non-admissible form when the evidence 'will be reduced to admissible form at trial.'" *DeBiasi v. Charter Cnty. of Wayne*, 537 F. Supp. 2d 903, 911 (E.D. Mich. 2008). The court does not consider the admissibility of the chart itself, but "the admissibility of its contents." *Id.* "If the contents of [the chart] could be presented in an admissible form at trial, the Court may consider [the chart's] contents in deciding Defendants' summary judgment motion." *Id.* Davis created the chart as part of her role as HR Manager; she could testify about its contents at trial and lay a foundation for its admission as a business record under Federal Rule of Evidence 803(6). Accordingly, the court may properly consider the chart in ruling on Defendant's summary judgment motion.

termination had no basis in fact, a plaintiff 'must provide evidence that the employer's allegations never happened.'"); *Chen*, 580 F.3d at 401 ("Disputing facts is not enough – instead, the plaintiff must produce evidence demonstrat[ing] that the employer did not 'honestly believe' in the proffered nondiscriminatory reason for its adverse employment action."). Broadnax's subjective view of his performance or how he believes the job should be performed does not serve to cast doubt on Rhombus's legitimate, non-discriminatory reason. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (stating that "the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment"); *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (holding that the plaintiff's "subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination"). The court must not "substitute its judgment for that of management" and its "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Hedrick*, 355 F.3d at 462.

To the extent the court may consider it, the affidavit of Takelia Stephens does not impact this conclusion. *See* ECF No. 23-1. Stephens

worked as a Final Quality Technician until she left the company in 2023. In general, the affidavit describes Stephens' opinion that the treatment of blacks was "terrible" at Rhombus, the company was segregated, with blacks in production and whites in management, and that most black people were too scared to complain for fear of losing their jobs. Stephens' statements are generally "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 584-85. Although Stephens believed Rhombus's handling of the final dress code incident, which resulted in Broadnax's firing, was "wrong and unfair," she does not cast doubt on Rhombus's honest belief that Broadnax was not performing to Rhombus's standards. At most, Stephens suggests that Rhombus was mistaken in its judgment of how Broadnax handled the incident. *See* ECF No. 23-1 ("I gave Courtney in HR my statement but despite that, they took the word of other people including Ken, even though I was the only person besides Darryl and the woman who actually witnessed what happened."). But "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *White v. Dep't of Transportation*, 334

Mich. App. 98, 111, 964 N.W.2d 88, 94 (2020). Broadnax has not shown that his termination was motivated by discriminatory animus and his discrimination claims are subject to dismissal.

   III.   Retaliation

To demonstrate a prima facie case of retaliation under the ELCRA, the plaintiff bears the initial burden of establishing that "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 488-89 (6th Cir. 2020). "For a plaintiff to demonstrate a qualifying 'protected activity,' he must show that he took an 'overt stand against suspected illegal discriminatory action.'" *Id.* "While the plaintiff's allegations of protected activity do not need to 'be lodged with absolute formality, clarity, or precision,' the plaintiff must allege more than a 'vague charge of discrimination.'" *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (citation omitted). The employee must act reasonably and "is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Id.* (citation omitted). "To

establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present evidence 'sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Khalaf*, 973 F.3d at 493.

Plaintiff argues that he was terminated after complaining that Pulter used the term "colored" to refer to African Americans.[2] In this case, however, temporal proximity is insufficient to establish a causal connection between the protected activity and Broadnax's termination. After Broadnax made this complaint, Rhombus documented several instances when it was dissatisfied with his performance, including his unauthorized termination of another employee. *See* ECF No. 20-10. "[A]n intervening legitimate reason" to take an adverse employment action "dispels an inference of retaliation based upon temporal proximity." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013). Other than the timing, Broadnax provides no evidence that his protected activity was the "likely reason" for his termination. Therefore, his retaliation claim fails.

---

[2] Broadnax's subsequent vague and unsubstantiated complaints that other employees believed Pulter was racist do not qualify as protected activity under the standard articulated in *Jackson*. 999 F.3d at 345.

### IV. Hostile Work Environment/Harassment

Although not directly addressed by the parties, the court will consider the claims of hostile work environment/harassment raised in Plaintiff's complaint. "A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 & n.3 (6th Cir. 2017) (noting elements are "substantially the same" under Title VII or ELCRA); *Quinto v. Cross & Peters Co.*, 451 Mich. 358, 369, 547 N.W.2d 314, 320 (1996).

With respect to the fourth factor, courts consider the totality of the circumstances, including the frequency of the conduct, its severity, and "whether it is physically threatening or humiliating, or a mere offensive utterance," to determine whether the harassment was "sufficiently severe or pervasive to alter the conditions of [one's] employment and create an abusive working environment." *Phillips*, 854 F.3d at 327 (citations omitted). Significantly, isolated incidents or occasional racist language are not

actionable because they are generally not severe or pervasive enough to create a hostile environment. *Id.*

Viewing the record in the light most favorable to Plaintiff, he has not alleged conduct that could be viewed as creating a hostile work environment based upon his race or religion. He refers to incidents when Pulter used the term "colored" to refer to African Americans and when "Ken" called him the n-word. Although offensive, these incidents do not amount to severe and pervasive conduct that created an abusive working environment. Accordingly, Plaintiff's hostile work environment/harassment claims are dismissed.

## ORDER

IT IS HEREBY ORDERED that Defendant's corrected motion for summary judgment (ECF No. 20) is GRANTED. Defendant's original motion for summary judgment (ECF No. 19) is terminated for docket management purposes.

Dated: February 3, 2025

                                              s/George Caram Steeh
                                              HON. GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

- 19 -

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 3, 2025, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk